Dear Mr. Kliebert:
This office is in receipt of your request for an opinion of the Attorney General in regard to burial of paupers. You point out there appears to be a conflict between R.S. 33:1565 which mandates the Parishes pay for the burial of paupers, and R.S.46:571 which indicates the Parish "may" pay for the burial expenses of paupers. You ask whether it is mandatory or not for each parish to pay for a pauper burial, and if there is a maximum amount that can be paid.
R.S. 33:1565A(2) provides as follows:
 The coroner shall arrange for the burial of paupers, preferably by a Louisiana licensed funeral home. The burial expenses shall not exceed the actual cost of the service, and shall be paid by the parish or municipality in which the death occurred. However, such expenses for patients or residents of any state-operated health care or treatment facility shall not be paid by the parish or municipality in which the death occurred, but shall be paid by the state. The state or any municipality or parish may establish a maximum amount which it shall pay for individual burial expenses.
R.S. 46:571 sets forth the following:
 The parish governing authorities may, when called upon by the proper authorities to do so, pay the actual burial expenses, not to exceed the cost of the service, of all paupers carried on the parochial list of paupers and whose deaths have been caused by natural causes. The state or any municipality or parish may establish a maximum amount which it shall pay for individual burial expenses.
The general rule of statutory interpretation when there are two sets of laws enacted purporting to govern the same subject matter is both provisions are to be given effect whenever possible. If the acts can be reconciled by a fair and reasonable interpretation, it must be done since the repeal of a statute by implication is not favored and will not be indulged in if there is any other reasonable construction. Moreover, where two acts relating to the same subject are passed at the same legislative session, there is a strong presumption against implied repeal, and they are to be construed together, if at all possible, so as to reconcile them, giving effect to each. It is only where there is a direct and irreconcilable conflict between them that resort may be had to such conflict-resolving rules as the last enacted statute prevailing over the first enacted statute or the more specific statute prevailing over the more general statute.
It is significant that Act 55 of 1987 states it is to amend and reenact R.S. 33:1565(A)(2) and R.S. 46:571 all relative to burial of paupers to provide that the state or any municipality or parish may establish a maximum expenditure for the burial of paupers not to exceed the actual cost of the burial and to provide for related matters. Therefore, we conclude the statutes are to be construed together, and we do not find there is any irreconcilable conflict.
R.S. 33:1565(2), which states that the coroner shall arrange for the burial of paupers, follows the paragraph that provides "upon completion of an autopsy or coroner's investigation, if the investigation reveals that an autopsy is not required", he shall release to family or friends the body for burial. It is logical that the next provision places the burden on the coroner to see to the burial of a pauper because he has no one to turn the body over to, and the cost is borne by the parish or municipality where the death occurred.
We believe R.S. 46:571 is applicable to those situations where the pauper's death has not required the coroner's investigation, and for those governing authorities who in their discretion have set up programs for the poor under Chapter 4, Poor Relief, of Title 46, Public Welfare and Assistance. The statute specifically states it applies to pauper's death being from "natural causes" and when the burial is requested "by the proper authority", which we take to mean other than a coroner's case, and for paupers on the parochial list. The entire chapter is for the discretionary establishment of programs by cities and parishes for relief for the poor and infirm as distinguished from public welfare and assistance by the State. In Atty. Gen. Op. No. 80-1536 this office observed the requirement for burial was that the pauper be on the parochial list, and if lists are not maintained, it was concluded the statute has become ineffective. Under such an interpretation there is no conflict between the statutes wherein payment is mandated for a pauper that is a coroner's case, but only states the governing authority "may" pay the burial expenses for paupers dying from natural causes that are on the parochial list when called upon by the proper authorities.
Moreover, we believe that a great number of pauper deaths despite being from natural causes will be coroner cases and, as a coroner case, the payment by the parish or municipality where the death occurs is mandated. The Code of Criminal procedure and R.S.33:1556 imposes upon the coroner a duty to conduct an investigation when a death is suspicious, unexpected, from an injury, or trauma and for natural causes if not seen by a physician within thirty-six hours prior to death.
Thus, we conclude it is mandatory for the parish to pay for a pauper burial that is a coroner case, but it is discretionary if the governing authority establishes a program for burial of paupers that have not been a coroner's case.
Where the coroner is obligated to arrange for the burial of a pauper the statute directs the expense shall "be at cost when possible." This office has found this puts the onus upon the coroner to obtain a burial at cost or as close thereto as he can negotiate, but it was concluded unless there is evidence of dereliction of duty by the coroner, the cost certified as necessary and correct by the coroner should be paid, Atty. Gen. Op. No. 80-1536.
For those burials of paupers that are not coroner cases where programs are established for burial of paupers, R.S. 46:571
provides that the state, municipality or parish may establish a maximum amount it shall pay for individual burial expense.
We hope this sufficiently answers your questions, but if we can be of further assistance, please contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR